# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MOUSE ON THA TRACK LLC, BOOSIE BAD AZZ PUBLISHING LLC, PHAT BOSS PUBLISHING, SAVAGE LIFE PUBLISHING LLC, and TRILL PRODUCTIONS, | § § § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 3:18-CV-2980-S-BH |
| PARG MANAGEMENT LLC and DARYUSH FERDOWS, | § § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By electronic order of reference dated May 30, 2019 (doc. 14), before the Court is *Plaintiffs' Motion for Default Judgment and Memorandum of Law in Support of Motion for Default Judgment*, filed May 28, 2019 (doc. 12). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

On November 7, 2018, Mouse On Tha Track LLC (Mouse), Boosie Bad Azz Publishing LLC (Boosie), Phat Boss Publishing (Phat), Savage Life Publishing LLC (Savage), and Trill Productions (Trill) (collectively, Plaintiffs) filed this suit against Parg Management LLC (PML) and Daryush Ferdows a/k/a Dario Ferdows (Ferdows) (collectively Defendants), alleging violations of the Copyright Act, 17 U.S.C. § 101 *et seq.* (doc. 1.)[1]

Plaintiffs are the owners of the copyrights in three original musical compositions that have

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

been printed and published in conformity with the Copyright Act (collectively, the Compositions[2]). (doc. 1 at 1, 4.)  They are all members of the American Society of Composers, Authors, and Publishers (ASCAP), which is "a membership association that represents, licenses, and protects the public performance rights of its more than 660,000 songwriter, composer, and music publisher members."  (*Id.* at 2.)  They allege that "[e]ach ASCAP member grants to ASCAP a non-exclusive right to license the performing rights in that member's copyrighted musical compositions."  (*Id.*)  In turn, ASCAP "licenses public performances of its members' musical works, collects license fees associated with those performances, and distributes royalties to its members, less ASCAP's operating expenses." (*Id.* at 2-3.)

PML owns and operates a public entertainment establishment called Park Avenue, which is located at 11035 Ables Lane, Dallas, Texas 75354, and Ferdows is PML's "principal, manager, and/or officer."  (*Id.* at 2.)  Defendants entered into a license agreement with ASCAP on December 1, 2014, but because they failed to pay the required license fees, ASCAP terminated the agreement on March 2, 2017.  (*Id.* at 3.)  ASCAP representatives attempted to contact Defendants on multiple occasions to offer to reinstate the ASCAP license for Park Avenue, and to warn them of the legal consequences of performing the copyrighted music of its members without a license, but they refused those offers.  (*Id.* at 3.)  Between the evening of May 18 and early morning of May 19, 2018, an investigator associated with ASCAP entered Park Avenue, and observed public performances of the Compositions. (doc. 12 at 9.)

---

[2]Plaintiffs collectively own that certain musical composition published on February 26, 2008, and assigned certificate of registration number PA 1-924-164; Savage, Mouse, and Trill collectively own that certain musical composition published on July 5, 2005, and assigned certificate of registration number PA 1-925-098; and Mouse and Trill both own that certain musical composition published on June 22, 2007, and assigned certificate of registration number PA 1-638-614. (doc. 1 at 6-7.)

On November 7, 2018, Plaintiffs filed this action for copyright infringement seeking remedies under the Copyright Act. (*See* doc. 1.)  Summonses were issued for Defendants on November 7, 2018. (doc. 7.)  Plaintiffs properly served Ferdows on November 13, 2018 (doc. 8), and PML on November 29, 2018 (doc. 9).  Defendants failed to answer or respond to the complaint, and Plaintiffs sought entry of default (doc. 10), which the Clerk of Court entered on February 14, 2019 (doc. 11).

Plaintiffs seek to enjoin and permanently restrain Defendants from publicly performing the Compositions, "from causing or permitting the said compositions to be publicly performed at Park Avenue, or in any place owned, controlled, managed, or operated by Defendants, and from aiding or abetting the public performance of such compositions in any such place or otherwise." (doc. 1 at 5.)  They also seek to recover statutory damages for the copyright infringement and their attorneys' fees and costs. (*Id.*)

## II.  MOTION FOR DEFAULT JUDGMENT

Plaintiffs move for default judgment under Rule 55 of the Federal Rules of Civil Procedure. (doc. 12.)

Rule 55 sets forth the conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment.  There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).  First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a).  Next, an entry of default must be entered when the default is established "by affidavit or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141.  Third, a party may apply to the clerk or the court for a default judgment after entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins.*

*Co.*, 84 F.3d at 141.  Here, because Defendants have failed to plead or otherwise defend, and Plaintiffs have obtained an entry of default on them, the first two requisites for a default judgment have been met. (docs. 8-9, 11.)  Remaining for determination is whether a default judgment is warranted.

"'Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Moreover, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)).  "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id.* Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984) (per curiam).  The decision to enter a judgment by default is discretionary. *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004). "Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

In determining whether the entry of a default judgment is appropriate, courts look to whether default judgment is procedurally warranted, whether the award is supported by a sufficient factual

basis in the plaintiff's live complaint, and whether the specific amount of damages can be determined with "mathematical calculation by reference to information in the pleadings and supporting documents." *Ramsey v. Delray Capital LLC*, No. 3:14-CV-3910-B, 2016 WL 1701966, at *3 (N.D. Tex. Apr. 28, 2016) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

## A.    <u>Procedural Requirements</u>

Courts consider numerous factors in deciding whether to grant a motion for default judgment. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed. 1998).  The applicable factors include: (1) the amount of money involved; (2) whether there are material issues of fact or issues of substantial public importance at stake; (3) whether the default is technical in nature; (4) the extent of prejudice to the plaintiff due to the delay; (5) whether the grounds for default are clearly established; (6) the harsh effect of a default judgment; (7) whether the default resulted from a good faith mistake or excusable neglect on the defendant's part; (8) whether the plaintiff's actions contributed to the delay; and (9) whether the court would be obligated to set aside the default on motion by the defendant. *Id.*; *see Lindsey*, 161 F.3d at 893 (citing 10A WRIGHT, MILLER, KANE & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685); *Stelax Indus., Ltd.*, 2004 WL 733844, at *11 (same).

Here, Plaintiffs seek remedies under the Copyright Act for copyright infringement against Defendants.  (*See* docs. 1 at 5; 12 at 18.)  They seek injunctive relief, $51,000 in statutory damages, $5,594.36 in attorneys' fees and costs, and post-judgment interest.  (doc. 12 at18.)  Regarding the first factor, the amount of money involved is not a relatively substantial amount of money. *US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *3 (N.D. Tex. June 17, 2016), *adopted by* 2016 WL 3766362 (N.D. Tex. July 11, 2016).  Under the second factor,

there are no material issues of fact apparent from the complaint, the default motion, or the attached exhibits, and there is a public interest in preserving rights provided by federal copyright law. *Lakedreams v. Taylor*, 932 F.2d 1102, 1110 (5th Cir. 1991); *Live Nation Motor Sports, Inc. v. Davis*, No. 3:06-CV-276L, 2006 WL 3616983, at *5 (N.D. Tex. Dec. 12, 2006) ("The court believes it serves the public interest to enforce the Copyright Act . . . .").

Although the default appears to be technical in nature (third factor), Plaintiffs are prejudiced and harmed by the continued delay in this case, which is the fourth factor. *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt). Under the fifth and sixth factors, the grounds for default are clearly established, and a default judgment is not unusually harsh under these facts given that Defendants have received ample notice of this action and sufficient time to respond. *See Lindsey*, 161 F.3d at 893. The seventh, eighth, and ninth factors similarly favor default judgment because Defendants have not offered any evidence that their failure to answer was the product of a good faith mistake or excuse, Plaintiffs have not contributed to the delay in this case, and there does not appear to be any basis upon which the Court would be obligated to set aside the default. *See Ramsey*, 2016 WL 1701966, at *3.

No material issues of fact have been placed in dispute due to Defendants' failure to respond to the complaint. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). Because Defendants were properly served with the complaint and failed to answer or otherwise defend, the grounds for default

judgment are clearly established.[3] (*See* docs. 8, 9.) Accordingly, the procedural requirements for a default judgment are satisfied.

## B.    <u>Entitlement to Judgment</u>

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.* at 498. Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Id.* at 498 n.3.

### 1.    *Copyright Infringement*

Plaintiffs allege that Defendants are liable for copyright infringement based on "Defendants' unauthorized public performance of Plaintiffs' copyrighted musical compositions." (doc. 1 at 4.)

"It is a violation of copyright in a musical composition to perform that work publicly without

---

[3]Plaintiffs include a copy of a military service declaration and a status report from the Department of Defense Manpower Data Center showing that Ferdows is not in the military. (*See* doc. 13 at 57-59.)

7

a license." *Broad. Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, 1994 WL 144812, at *1 (5th Cir. 1994) (citing 17 U.S.C.A. § 106(4)) (unpublished).  To succeed on a copyright infringement claim, a plaintiff must prove the following elements: (1) the originality and authorship of the compositions involved; (2) compliance with all formalities required to secure a copyright under Title 17 of the United States Code; (3) that the plaintiff is the proprietor of the copyrights of the composition(s) involved in the action; (4) that the compositions were performed publicly; and (5) that the defendants did not receive permission from the plaintiff or its representatives for the performance. *EMI April Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp.2d 619, 622 (N.D. Tex. 2008).  Copyright registration certificates serve as prima facie evidence of the first three elements of the infringement claim. 17 U.S.C. § 410(c); *see Gen. Universal Sys., Inc. v. Lee*, 379 F. 3d 131, 141 (5th Cir. 2004) (per curiam) ("A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright.").  The Copyright Act specifies that "[t]o 'perform' a work means to recite, render, play, dance, or act it, either directly or by means of any device or process." 17 U.S.C. § 101.

Here, Plaintiffs allege that they own the copyrights to the Compositions, and provide the copyright registration certificates for the Compositions from the United States Copyright Office. (docs. 1 at 1; 13 at 24-31.)  These certificates serve as prima facie evidence that Plaintiffs legally own the exclusive rights to these musical compositions, satisfying the first three elements. *See Gen. Universal Sys., Inc.*, 379 F. 3d at 141.

Plaintiffs attach the report from the ASCAP investigator, which states that he heard each of the Compositions being performed at Park Avenue between the evening of May 18 and early morning of May 19, 2018.  (doc. 13 at 32-48.)  The transmission of music via disc jockey is

8

considered a public performance under the Copyright Act, which is prohibited without express authorization by the copyright owners. *See* 17 U.S.C. § 101; *see also Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 78 (5th Cir. 1987) ("An impermissible public performance includes playing songs on records in a bar or music club.") (citation omitted).  The fourth element has been satisfied.

Plaintiffs further allege that while Defendants had previously entered into a license agreement with ASCAP on December 1, 2014, it was terminated on March 2, 2017, after Defendants' nonpayment. (*Id.* at 5, 9-10.)  ASCAP contacted Defendants at least four times reminding them of their liability under the Copyright Act.  (doc. 13 at 5-6, 12-16.).  The uncontroverted evidence shows that Defendants had been put on notice that they no longer possessed a license to play ASCAP music after March 2, 2017, and they did not have permission to publically perform the Compositions at Park Avenue on May 18, 2018.  The fifth element has also been satisfied.

Accordingly, Plaintiffs have provided a sufficient basis in the pleadings for recovering against Defendants for copyright infringement. *See Jet Rumeurs*, 632 F. Supp.2d at 622.

### 2.    Joint and Several Liability

"Liability for copyright infringement falls not only on the person who actually performed the copyright[ed] music, but also on those who: (1) had the right and ability to control the infringing activity; and (2) had a direct financial interest in that activity." *Jet Rumeurs*, 632 F. Supp. 2d at 623 (citations omitted); *see also Hobi, Inc.*, 1994 WL 144812, at *1.  Further, "all participants in copyright infringement are jointly and severally liable as tortfeasors." *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F.Supp. 1257, 1262 (S.D. Tex. 1989) (citing *Screen*

*Gems–Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972)), *aff'd by* 915 F.2d 1567 (5th Cir. 1990).

Plaintiffs allege that PML, which is managed by Ferdows, owns, controls, operates, and manages Park Avenue. (doc. 1 at 2.)  They also allege that at all relevant times, Defendants had the right and ability to control the infringing activity at Park Avenue, and correspondingly derived a direct financial benefit therefrom.  (*Id.*)  By virtue of their default, Defendants have admitted that the factual allegations in the complaint are true.  *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Defendants should therefore be found jointly, severally, and vicariously liable for the infringements that occurred at Park Avenue from May 18-19, 2018.  *See Jet Rumeurs, 63*2 F. Supp. 2d at 623.

## C.    <u>Entitlement to Damages</u>

Plaintiff's motion for default judgment seeks to recover a judgment for injunctive relief, statutory damages of $17,000 for each count of copyright infringement, attorneys' fees and costs, and post-judgment interest.  (doc. 12 at 5.)

In awarding relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  The relief requested in a plaintiff's complaint limits the relief available in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n. 3 (5th Cir. 1975).  Damages on a default judgment are normally not awarded without a hearing or a demonstration by detailed affidavits; however, a hearing is unnecessary if the amount of damages can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *See James*, 6 F.3d at 310.  The burden is on the plaintiff to provide an evidentiary basis for the damages it seeks. *Broadcast Music, Inc. v. Bostock Billiards & Bar Assoc.*, No. 3:12-CV-413-B, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013).  Because the requested

relief does not differ in kind from, or exceed in amount, what is demanded in the pleadings, the only remaining issue is whether the relief requested is appropriate based on the governing law. *Chevron Intellectual Property, LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009).[4]

### 1. *Permanent Injunction*

Plaintiffs request a permanent injunction enjoining and restraining Defendants from publicly performing any copyrighted musical works in the ASCAP repertory at Park Avenue or any other establishment owned, operated, or managed by Defendants without proper authorization. (docs. 1 at 5; 12 at 15.)

Under 17 U.S.C. § 502(a), a court has the power to grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (quoting 17 U.S.C. § 502(a)). Permanent injunctions are not awarded lightly, but a copyright owner is entitled to such relief in order to prohibit further infringement where the requirements are met. *Posada v. Lamb Cty., Tex.*, 716 F.2d 1066, 1070 (5th Cir. 1983); *Jobete Music Co., Inc. v. Hampton*, 864 F. Supp. 7, 9 (S.D. Miss. 1994). A permanent injunction is appropriate if a plaintiff can prove: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *aff'd by* 168 F.3d 486 (5th Cir. 1999).

---

[4]While Plaintiffs' motion and complaint both request the same forms of relief, the complaint did not specifically mention post-judgment interest—only "for such other and further relief as may be just and equitable." (*See* doc. 1 at 5.) Although post-judgment interest is requested for the first time in their motion for default, it may still be considered as available relief. *Dontos v. Vendomation NZ Ltd.*, No. 3:11-CV-553-K, 2015 WL 5311094, at *7 (N.D. Tex. Aug. 24, 2015) (citing *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594-95 (5th Cir. 2006)), *adopted by* 2015 WL 5319817 (N.D. Tex. Sept. 10, 2015).

Courts have acknowledged that default against a defendant is tantamount to actual success on the merits and that a permanent injunction may be issued as part of a default judgment. *Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006). The first prong has therefore been satisfied in this case. *Id.* As for the second prong, Plaintiffs have no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendants. *S & H Indus. v. Selander*, 932 F. Supp. 2d 754, 765 (N.D. Tex. 2013). Additionally, there has been no showing that requiring Defendants to restrain from future infringement will cause them harm, and any potential harm caused by requiring them to comply with the law is insignificant compared to the continuing harm to Plaintiffs' livelihoods if the injunction is not granted. Fourth, an injunction would serve the public interest by promoting compliance with copyright law. *Lakedreams*, 932 F.2d at 1110. That is, an injunction is essential to uphold the integrity of copyright laws which seek to encourage individual efforts and creativity by granting valuable enforceable rights. *Worlds of Wonder, Inc. v. Veritel Learning Sys.*, 658 F. Supp. 351, 357 (N.D. Tex. 1986) (citing *Atari Inc. v. Am. Phillips Consumer Electric Corp.*, 672 F.2d 607, 620 (7th Cir. 1982)). Accordingly, Plaintiffs' request for a permanent injunction is appropriate and should be granted. *See, e.g., Jet Rumeurs*, 632 F. Supp. 2d at 624 (finding that injunctive relief protecting all music in the ASCAP repertory is appropriate because the plaintiff copyright holders represented the interests of all ASCAP members whose music could be infringed by the defendants).

### 2.    *Statutory Damages*

Plaintiffs also seek statutory damages of $51,000, which is $17,000 for each of three alleged acts of copyright infringement by Defendants. (doc. 12 at 15-17.)

A successful plaintiff in a copyright infringement case must choose between actual and

statutory damages. 17 U.S.C. § 504(a); *In re Isbell Records, Inc.*, 774 F.3d 859, 873 (5th Cir. 2014).

If the plaintiff elects statutory damages, the amount available is "not less than $750 or more than

$30,000" for *each* work infringed. *Id.* § 504(c)(1); *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388,

394 (5th Cir. 2014).  If the infringement was willful, "the court in its discretion may increase the

award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).  A

defendant acts "willfully" within the meaning of § 504(c)(2) when he "knows his actions constitute

an infringement," even if the actions were not malicious.  *See Broad. Music, Inc. v. Xanthas, Inc.*,

855 F.2d 233, 236 (5th Cir. 1988).  The Copyright Act provides district courts wide discretion in

awarding damages in a copyright case—within those limits set by the statute. *Capitol Records, Inc.*

*v. Lyons*, No. CIV.A.3:03-CV-2018-L, 2004 WL 1732324, at *7 (N.D. Tex. Aug. 2, 2004) (citing

*Golden Torch Music Corp. v. Lichelle's Inc.*, Civ.A. No. W-86-CA-005, 1987 WL 14543, at *4

(W.D. Tex. Jan. 26, 1987).  "Ultimately, statutory damages are intended not merely for the

restitution of profits or reparation of injury, but to deter wrongful conduct."  *Future World Elecs.,*

*LLC v. Over Drive Mktg., LLC*, No. 3:12-CV-2124-B, 2013 WL 5925089, at *4 (N.D. Tex. Nov. 5,

2013) (citations and quotations omitted).

Here, Plaintiffs elect statutory damages and request $17,000 for each of the three counts of

infringement alleged for a total award of $51,000.  (doc. 12 at 5, 16.)  They allege that the ASCAP

fees for a license covering Defendants' performances of copyrighted songs from March 2, 2017

through April 16, 2019, would have been approximately $17,000.  (docs. 12 at 16; 13 at 8.)

Plaintiffs have shown that Defendants permitted to be publicly played the Compositions without

authorization, and did so despite receiving repeated warnings of copyright law violations and offers

to obtain the requisite license from ASCAP.  *See Malaco Inc. v. Cooper*, No. CIV.A. 3:00-CV-2648-

P, 2002 WL 1461927, at *4 (N.D. Tex. July 3, 2002) ("Willfulness may be inferred if notice of a valid copyright was given prior to infringement.") (citing *Chi–Boy Music v. Charlie Club, Inc.,* 930 F.2d 1224, 1227 (7th Cir. 1991)). Defendants therefore knew that publically performing the Compositions at Park Avenue in May of 2018, was a violation of federal copyright law, and "[s]uch knowing violation of copyright law is properly classified as 'willful' infringement." *See Jet Rumeurs*, 632 F. Supp. 2d at 625. Further, the requested total award of $51,000 represents an amount "approximately 3 times the amount of licensing fees that Defendants would have been required to pay had they obtained an ASCAP license." (doc. 12 at 16.) " In light of the deterrent purpose of statutory damages, courts frequently award statutory damages in amounts that are between two and three times the license fee refused by the defendant." *Jet Rumeurs*, 632 F. Supp. 2d at 625 (citations omitted). The willful nature of Defendants' actions warrants an award of statutory damages in the amount of $17,000 per copyright infringement that is reasonable and sufficient to deter future infringement.

While it is true that the statutory damages in this case are neither liquidated nor capable of mathematical calculation, it is not necessary for the court to hold a hearing as long as it ensures there is a basis for the damages specified in a default judgment. *See* Fed. R. Civ. P. 55(b)(2) ("*If*, in order to enable the court to enter judgment . . . it is necessary to take an account or to determine the amount of damages . . . the court *may* conduct such hearings or order such references as it deems necessary and proper . . .) (emphasis added). Because the amount of the judgment can be reliably computed from the record, no hearing is necessary. *See James*, 6 F.3d at 310 (stating that the court relied on affidavits, documentary evidence, and the judge's personal knowledge of the record). Accordingly, Plaintiffs should be awarded $17,000 per copyright infringement under 17 U.S.C. §

504(c)(1), and Defendants should be ordered to pay the total amount of $51,000 in statutory damages to Plaintiffs.

### 3.    *Attorneys' Fees and Costs*

Plaintiffs seek attorneys' fees in the amount of $4,207.00 and costs in the amount of $1,387.36, for a total amount of $5,594.36. (doc. 12 at 17.)

The Copyright Act "expressly provides for awards of attorney's fees as well as costs." 17 U.S.C. § 505.  Although attorney's fees are awarded in the trial court's discretion, they are the rule rather than the exception and should be awarded routinely. *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985).  The Supreme Court has stated that the language of section 505 does not provide a "precise rule or formula" to calculate fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994).  Some non-exclusive factors to consider include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence." *Id.*

Plaintiffs are entitled to the attorneys' fees and costs incurred to defend their legal rights against Defendants' infringements.  The uncontroverted evidence shows that Defendants refused to obtain an ASCAP license for the Compositions publically performed at Park Avenue.  *See Jet Rumeurs*, 632 F. Supp. 2d at 626 ("Although a finding of willful infringement is not necessary to support an award of attorneys' fees, the defendants' willful infringement may be considered by the court.") (citation omitted).  Plaintiffs provide a declaration by their counsel detailing the costs incurred, as well as the time and rates of the attorneys. (doc. 13 at 49-56.)  They also provide copies of the attorneys' billing records for legal services rendered through January 2019 that itemize the time spent on this case with details regarding the specific work performed, the charges for that time,

and the law firm's out-of-pocket expenses. (*Id.* at 51-55.) The Court finds that the declaration and the invoices show that the costs and fees incurred are reasonable under the circumstances of the case, and Plaintiffs should be awarded the full amount requested.

### 4.    Post-Judgment Interest

Plaintiffs also seek post-judgment interest. (doc. 12 at 5.) "Post-judgment interest is awarded as a matter of course" under 28 U.S.C. § 1961(a). *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)). Given that "district courts do not have the discretion to deny post-judgment interest on monetary judgments," *Paisano Capital SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *5 (N.D. Tex. July 18, 2019) (citing *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017)), Plaintiffs' request for post-judgment interest should be granted and awarded at the applicable federal rate[5] from the date of judgment until it is paid in full.

### III. RECOMMENDATION

Plaintiffs' motion for default judgment should be **GRANTED**, and Defendants should be permanently enjoined from allowing to be publicly performed any copyrighted musical works in the ASCAP repertory at any establishment owned, operated, or managed by Defendants without proper authorization through possessing a license from ASCAP or obtaining permission directly from the copyright owners of the works. Plaintiffs should also be awarded statutory damages of $51,000, attorneys' fees and costs in the amount of $5,594.36, and post-judgment interest at the applicable federal rate from the date of judgment until paid in full.

---

[5]The post-judgment interest rate is based upon the applicable federal rate. *See* 28 U.S.C. § 1961.

**SO RECOMMENDED** on this 13th day of November, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE